IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In the Matter of the Guardianship of | ) |
| | ) No. 32206-8-III |
| JAMES DONALD CUDMORE. | ) |
| | ) |
| | ) UNPUBLISHED OPINION |
| | ) |

SIDDOWAY, J. — After the trial court disqualified John Bolliger as counsel for

James Donald Cudmore in this guardianship proceeding, Mr. Bolliger persisted for a time

in taking legal action, ostensibly on Mr. Cudmore's behalf. The trial court eventually

imposed CR 11 sanctions on Mr. Bolliger to compensate the guardianship estate for fees

incurred in responding to what the court found to be postdisqualification meddling by Mr.

Bolliger that lacked a basis in law or fact.

Mr. Bolliger appeals the sanctions, which we affirm.

FACTS AND PROCEDURAL BACKGROUND

Timothy Lamberson is the son of Annette Cudmore and the stepson of James

Cudmore. After his mother married Mr. Cudmore, Mr. Lamberson lived in their

household for 11 years as one of 4 stepchildren. Mr. Cudmore had been married to Mr.

Lamberson's mother for 50 years at the time this action to establish a guardianship for

Mr. Cudmore was commenced.

Mrs. Cudmore suffered a disabling stroke in 2007 and Mr. Cudmore asked Mr.

Lamberson to take over the responsibilities of daily banking, paying bills, and managing

his and Mrs. Cudmore's health care and assisted living and nursing home expenses. To

that end, Mr. Cudmore appointed Mr. Lamberson his attorney in fact, executing a durable

power of attorney covering financial and health care decisions on January 30, 2007. He

executed a further durable power of attorney for health care on January 8, 2008.

In 2012, Mr. Cudmore was diagnosed with dementia, which progressed thereafter.

On July 2, 2013, Mr. Lamberson received a call from a financial advisor at

Edward D. Jones, a financial institution at which Mr. Lamberson was a joint holder of his

stepfather's accounts. The financial advisor expressed concern that Mr. Cudmore was

there with a woman and the two were inquiring about Mr. Cudmore's accounts and

beneficiaries. Mr. Lamberson recognized the woman's name as a former coworker of his

stepfather and friend of the Cudmores.[1] Mr. Lamberson immediately called his

stepfather, who admitted being with his friend but denied being at Edward D. Jones.

The next day, Mr. Cudmore told Mr. Lamberson that his friend had taken him to a

lawyer's office to draft new estate planning documents and powers of attorney.

---

[1] The friend was not accused of any wrongdoing in the guardianship proceeding.

Concerned that Mr. Cudmore lacked capacity to take these actions and needed Mr. Lamberson's help to manage his and Mrs. Cudmore's affairs, Mr. Lamberson consulted a lawyer and on July 12 commenced this action to establish a guardianship. He asked to be appointed guardian in light of what he claimed had been a positive history with his stepfather and his familiarity with assets and expenses he had handled since 2008. An ex parte order was issued appointing C. Wayne May to serve as guardian ad litem.

On the eve of a hearing in the guardianship proceeding set for July 19, Mr. May moved the court to appoint attorney Rachel Woodard to represent Mr. Cudmore. On the same day, John Bolliger petitioned to be appointed Mr. Cudmore's attorney, informing the court that he already represented Mr. Cudmore on estate planning matters, having had an initial consultation with him a couple of weeks earlier, on July 2. In a seven page declaration, Mr. Bolliger testified he had prepared new estate planning documents for Mr. Cudmore and explained why he was confident Mr. Cudmore had the testamentary capacity to make changes to his estate plan.

At the hearing the next day, Mr. Lamberson's lawyer told the court that Edward D. Jones personnel had been presented with a new power of attorney from Mr. Cudmore, appointing Mr. Bolliger his attorney in fact. He said that Edward D. Jones personnel threatened to interplead Mr. Cudmore's assets unless it could get an agreement about authority from Mr. Lamberson and Mr. Bolliger or, alternatively, a court order

identifying who could act on Mr. Cudmore's behalf. The court announced it would appoint Mr. May to handle Mr. Cudmore's financial affairs for the time being.

When the competing petitions for appointment of Ms. Woodard or Mr. Bolliger to act as Mr. Cudmore's lawyer in the guardianship were addressed, Mr. Lamberson's lawyer stated that Mr. Bolliger's appointment was not appropriate under RPC 3.7, "as Mr. Bolliger, if he was not already a key witness in this case, has certainly by his actions of his declaration become absolutely a key witness." Report of Proceedings (RP) (July 19, 2013) at 9.

Responding, Mr. Bolliger handed the court a copy of RCW 11.88.045(1)(a), which states in part, "Alleged incapacitated individuals shall have the right to be represented by willing counsel of their choosing at any stage in the guardianship proceedings." He told the court, "Mr. Cudmore chooses me." RP (July 19, 2013) at 10. When the court asked Mr. Bolliger to respond to the argument that he was a witness and could not serve under the rules of professional conduct, Mr. Bolliger answered that any evidence he could provide as a witness was "pretty minor," although he conceded he had prepared the new estate planning documents and had replaced Mr. Lamberson as Mr. Cudmore's attorney-in-fact. *Id.* (July 19, 2013) at 12.

Given the opportunity to reply, Mr. Lamberson's lawyer argued, "there are times . . . when the participation of a witness in a case will be so substantial that there is no way

4

that they can provide effective representation . . . . Mr. Bolliger is not some [prescient] witness[,] he is one of the core players." *Id.* (July 19, 2013) at 18.

The court orally ruled that it would appoint Ms. Woodard to represent Mr. Cudmore, adding, "At some point later perhaps Mr. Bolliger you might be involved I don't know as a witness or perhaps as the attorney with other motions and briefing but at this point I'm going to appoint Rachel Woodard." *Id.* (July 19, 2013) at 20. Mr. Bolliger asked the court to indicate on its order appointing Ms. Woodard, "that you have heard and denied my petition to have me appointed as counsel." *Id.* (July 19, 2013) at 21. The trial court obliged, adding the handwritten ruling, "John Bolliger's motion for appointment as Mr. Cudmore's counsel is denied." Clerk's Papers (CP) at 21.

On July 22, Mr. Bolliger moved for reconsideration, renewing his request that he be appointed to represent Mr. Cudmore. His motion repeated facts earlier offered in support of his appointment, adding, "Mr. Bolliger is not planning to offer himself as a witness at trial in this case—regarding Mr. Cudmore's mental capacity at any given time (or regarding any other matter)." CP at 27. He argued that the prospect of his being a witness is "merely speculative." CP at 30. He argued that based on RCW 11.88.045(1)(a), it was Mr. Cudmore's "**unqualified right**" to choose which attorney would represent him, and Mr. Cudmore wanted Mr. Bolliger. CP at 28 (boldface in original). Finally, he argued that the trial court had never entered the findings required to justify disqualification. In concluding, he asked that if the court denied the motion, it

5

make "the findings required by CR 54(b) for certifying this attorney disqualification issue for immediate appeal." CP at 32.[2]

The trial court denied the motion for reconsideration on July 24.[3] Although a lawyer can seek discretionary review of a disqualification order under RAP 2.3, *e.g.*, *In re Estate of Barovic*, 88 Wn. App. 823, 826, 946 P.2d 1202 (1997); *American States Insurance Co. v. Nammathao*, 153 Wn. App. 461, 465, 220 P.3d 1283 (2009), no motion for discretionary review was filed by Mr. Bolliger.

The source of the sanctions that are challenged in this appeal are actions that Mr. Bolliger took thereafter. In imposing sanctions, the trial court made the following findings of fact as to actions taken by Mr. Bolliger after the court refused to reconsider its ruling disqualifying him and appointing Ms. Woodard. The court found that in taking these actions, Mr. Bolliger knew he was not a party nor did he represent one:

> 4. On August 7, 2013, Mr. Bolliger filed a note for motion docket scheduling a hearing for September 6, 2013. . . .
> 5. On August 15, 2013, Ms. Woodard sent a letter signed by Mr. Cudmore to Mr. Bolliger requesting that he send a copy of Mr. Cudmore's file to Ms. Woodard. Mr. Bolliger refused to provide Ms. Woodard with a copy of Mr. Cudmore's file. On October 15, 2013, Mr. Bolliger provided·

---

[2] Mr. Bolliger's request for a certification under CR 54(b) was misplaced. Simply stated, CR 54(b) applies when a claim in multi-claim or multi-party litigation has been concluded by a judgment that can be made final and appealed immediately without creating problems for claims that remain unresolved in the superior court. It had no application here.

[3] A certificate of mailing indicates that the court's order was sent to the attorneys of record, and to Mr. Bolliger, on that day. For reasons that are unexplained, the order does not appear to have been filed until August 12.

Ms. Woodard with a copy of Mr. Cudmore's will after being provided with a second written request from Mr. Cudmore.

6. On August 29, 2013, Mr. Bolliger filed a motion and memorandum seeking to have Mr. Cudmore testify, to strike the appointment of Ms. Woodard as Mr. Cudmore's attorney, or to certify the matter for appeal. . . .

7. On September 5, 2013, Mr. Lamberson filed a memorandum opposing the August 29, 2013 motion filed by Mr. Bolliger. Mr. Bolliger was on notice that his August 29, 2013 filing was potentially sanctionable by Mr. Lamberson's opposition memorandum requesting CR 11 sanctions against Mr. Bolliger.

8. On September 5, 2013, the Court struck the hearing noted by Mr. Bolliger for September 6, 2013. On September 6, 2013, Mr. Bolliger re-noted a hearing on the same motions for September 13, 2013. . . .

9. On September 9, 2013, Mr. Lamberson's attorney filed a declaration seeking to strike the hearing set by Mr. Bolliger. Mr. Bolliger was on notice that his September 6, 2013 filing was potentially sanctionable by the declaration of Mr. Lamberson's attorney seeking to strike the hearing and also requested fees be imposed against Mr. Bolliger for the filing. The Court struck the hearing in question.

10. On September 9, 2013, Mr. Bolliger issued subpoena duces tecums to HAPO Community Credit Union and Edward Jones seeking Mr. Cudmore's account records. . . .

11. Mr. Bolliger was on notice that his issuance of subpoenas was potentially sanctionable by the declaration of Mr. Lamberson's attorney submitted in support of the motion seeking to quash the subpoenas which requested the Court award terms against Mr. Bolliger for the frivolous issuance of invalid subpoenas.

CP at 935-36.

On December 13, 2013, as the guardianship proceeding moved toward completion, Mr. Lamberson, who would later be appointed to serve as full guardian of Mr. Cudmore's person and estate, moved for an order to show cause why the court should not impose CR 11 sanctions for "Mr. Bolliger's inappropriate actions." CP at

679. He sought to recover fees that he and the guardianship estate had incurred for his lawyer's, Mr. May's, and Ms. Woodard's services in responding to those actions.

The trial court conducted an initial hearing on the order to show cause on January 10, 2014. At its conclusion, the court orally granted the motion in principle. It ordered Mr. Lamberson's lawyer, Mr. May, and Ms. Woodard to go through their billings, identify services attributable to "intermeddling" by Mr. Bolliger after denial of his motion for reconsideration, and file and serve their fee requests on Mr. Bolliger. RP (Sept. 20, 2013) at 54. Following that process, the trial court conducted a second hearing, at the conclusion of which it ordered Mr. Bolliger to pay Mr. Lamberson a total of $9,782.75 in fees incurred by Mr. Lamberson and the estate as sanctions under CR 11. Mr. Bolliger appeals.

## ANALYSIS

CR 11(a) authorizes trial courts to impose a sanction against anyone who signs a pleading, motion, or legal memorandum in violation of the requirement that he or she has read the document and

> to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law.

A trial court imposing CR 11 sanctions must specify the sanctionable conduct in its order. *Biggs v. Vail*, 124 Wn.2d 193, 201, 876 P.2d 448 (1994).

8

On review, we determine "whether the trial court's findings are supported by substantial evidence in the record and, if so, whether those findings support the conclusions of law." *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). In determining whether sanctions are warranted, we apply "an objective standard" to determine "whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified." *Biggs*, 124 Wn.2d at 197; *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). "The decision to impose sanctions under CR 11 is vested within the sound discretion of the trial court." *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 189, 244 P.3d 447 (2010). "Discretion is abused when it is exercised on untenable grounds or for untenable reasons." *Id.*

### I. The merit of the disqualification decision is not before us

Before turning to Mr. Bolliger's assignments of error, we point out something that is not before us in this appeal: the merit of the disqualification decision. Mr. Bolliger did not seek discretionary review of the decision, which is now moot.

Nonetheless, a theme underlying Mr. Bolliger's appeal is his view that RCW 11.88.045(1)(a), which provides that an alleged incapacitated person can hire a lawyer to contest a guardianship proceeding, trumps a court's authority to determine whether a lawyer is disqualified under rules of professional conduct. He provided the trial court

9

with no authority for the proposition, and the court was unpersuaded. As the court

pointed out at the initial hearing on the order to show cause, the issue was not preserved:

> [Y]ou have to comply with court orders, and the court order was to appoint someone else as an attorney, and you had to respect that regardless of what you thought the law is[. Y]our remedy is to go appeal and we're all glad the Court of Appeals is there because sometimes we make mistakes, but you ignored that avenue and instead injected yourself into the case.

RP (Sept. 20, 2013) at 53. Since Mr. Bolliger did not seek discretionary review of the

trial court's disqualification order, he was obliged to abide by it.

### *II. Challenged findings of fact and conclusions of law*

We address Mr. Bolliger's challenges to the trial court's findings of fact and

conclusions of law in the order in which he presents them in his opening brief.

### *Finding 1*

Mr. Bolliger challenges the highlighted portion of finding 1: "James Cudmore, *at*

*that point an allegedly incapacitated person*, initially hired attorney John C. Bolliger to

represent him in the guardianship proceedings after previously hiring Mr. Bolliger to

prepare estate planning documents." CP at 934 (emphasis added); Br. of Appellant at 32.

He argues that the highlighted language erroneously implies that there was something

wrong with Mr. Cudmore retaining a lawyer to contest the guardianship.

Focusing on what the finding says rather than what Mr. Bolliger argues it implies,

substantial evidence supports the highlighted language. Mr. Lamberson filed a petition

under chapter 11.88 RCW to have a guardian appointed for Mr. Cudmore. With the

10

filing of that petition, Mr. Cudmore became an "alleged incapacitated person" within the meaning of the chapter. *See, e.g.*, RCW 11.88.030(1)(a).

The language does not support the implication that it was improper for Mr. Cudmore to retain a lawyer. As a matter of law, Mr. Cudmore was entitled to do just that. *See* RCW 11.88.045(1)(a).

*Finding 2*

Mr. Bolliger next challenges the highlighted language in the following portion of finding 2:

> On July 19, 2013, this Court granted the petition of the Guardian ad Litem to appoint attorney Rachel M. Woodard as Mr. Cudmore's attorney in the guardianship and denied Mr. Bolliger's petition to be appointed attorney for Mr. Cudmore *because Mr. Bolliger was going to be a witness in the case.*

CP at 934 (emphasis added). He characterizes the highlighted language as a conclusion of law rather than as a finding of fact.

The finding only addresses the basis, right or wrong, that the trial court gave for its ruling. In that context, the highlighted language is purely factual and is supported by the record. The trial court's concern about Mr. Bolliger being a witness was what caused it to disqualify him. Even Mr. Bolliger, in moving for reconsideration, characterized this as the basis for the trial court's ruling, stating, "At the hearing, the trial court did, indeed, disqualify Mr. Bolliger from being Mr. Cudmore's attorney for this guardianship case, on grounds of RPC 3.7; in doing so, the trial court, too, enunciated words to the effect of

11

'Mr. Bolliger might be a testifying witness in this case.'" CP at 27. The finding is supported by the record.

*Finding 12*

Mr. Bolliger next challenges finding 12, which states, "On September 20, 2013, [t]he Court quashed the subpoenas issued by Mr. Bolliger as invalid." CP at 482. Mr. Bolliger argues that the finding does not support the imposition of sanctions because he eventually recognized that his subpoenas omitted language required by CR 45 and he offered to withdraw them. Thus explained, his quarrel is with the court's conclusion, not with finding 12.

Reading finding 12 in conjunction with findings 10 and 11, it is apparent that the trial court imposed sanctions on Mr. Bolliger for issuing subpoenas while not an attorney of record in the case, not because of some shortcoming in the subpoenas' form. In granting the order quashing the subpoenas, the court said:

> I have signed the order quashing subpoenaes [sic], specifically the subpoenas directed to Edward Jones and HAPO, and *I'm doing so on the merits.* Mr. Bolliger—I think you called it an intermeddler. *He is not an attorney of record for any party in this case, and the rules are clear only attorneys of record have subpoena power in such cases.*

RP (Sept. 20, 2013) at 6 (emphasis added). Substantial evidence supports finding 12 and the findings support the conclusion that issuing the subpoenas was sanctionable.

12

*Findings 13, 14, and 15*

Mr. Bolliger challenges findings 13, 14, and 15, which identify the amount of fees the court found reasonably related to sanctionable conduct. The only lack of support Mr. Bolliger alleges is that since he offered to withdraw the subpoenas, it was unreasonable for Mr. Lamberson to proceed with $2,000 of legal effort that could have been avoided "with a simple phone call." Br. of Appellant at 35. Mr. Lamberson argues that he refused to accept Mr. Bolliger's proposed stipulation to withdraw the subpoenas for defective form because it was his position Mr. Bolliger lacked authority to issue any subpoena in the proceeding.

Substantial evidence supports the fact that fees were incurred. Whether they were reasonably incurred was a matter within the sound discretion of the trial court. *Eller*, 159 Wn. App. at 189.

*Finding 5 and conclusion 5*

Mr. Bolliger next challenges finding 5 and conclusion 5, which deal with Mr. Bolliger's refusal to provide a copy of Mr. Cudmore's will to Ms. Woodard after receiving her August 15, 2013 request for a copy, accompanied by a supporting request from Mr. Cudmore. Mr. Bolliger did not provide her with a copy of the will until he received a second written request from Mr. Cudmore in October.

Mr. Bolliger argues that he was not obliged to provide a copy of the will to Mr. Lamberson's lawyer, but the finding does not mention Mr. Lamberson's lawyer. He also

argues that he was never found in contempt, but the basis of sanctions was CR 11, not contempt. Substantial evidence supports the finding that Mr. Bolliger refused to provide a copy of the will to Ms. Woodard in response to her and Mr. Cudmore's initial written requests. The finding supports a conclusion of sanctionable conduct.

*Findings 3, 4, 6, 8, 10, and conclusion 6*

Next, Mr. Bolliger challenges portions of findings 3, 4, 6, 8, and 10, specifically, their statement that Mr. Bolliger took actions knowing that his July 22, 2013 motion for reconsideration had been denied. He takes particular issue with statements that his "request to certify for appeal" was denied. Br. of Appellant at 37-38.

Mr. Bolliger argues that the trial court's order denying his motion for reconsideration was silent on his request that, if the court refused to reconsider its decision, it enter "findings required by CR 54(b) for certifying this attorney disqualification issue for immediate appeal." CP at 32. Mr. Bolliger argues this left him "no choice but to re-seek that relief under . . . motion-for-revision language of CR 54(b)." Br. of Appellant at 38.

As already observed, CR 54(b) has no possible application to the trial court's refusal to reconsider its decision disqualifying Mr. Bolliger and appointing Ms.

Woodard.[4] If the trial court had made the error of treating its appointment decision as certifiable under CR 54(b), we would have dismissed the appeal. A trial court's determination of appealability under CR 54(b) is not binding on the appellate court. *Nelbro*, 101 Wn. App. at 523.

Mr. Bolliger's sole avenue of review of the disqualification order was RAP 2.3. It was incumbent upon him, not the court, to pursue that process. While a trial court can provide a certification in support of discretionary review,[5] certification is discretionary with the trial court and was not required for Mr. Bolliger to seek review.

Mr. Bolliger called his motion a "Motion for Reconsideration." CP at 23. The trial court entered an "Order on Motion for Reconsideration" that unequivocally stated, in part, that the "☒ Motion for Reconsideration is hereby . . . Denied ☒." CP at 45. Mr. Bolliger argued below that lacking an explicit decision on his request for "findings required by CR 54(b)" it was reasonable for him to repeatedly re-note his motion. The

---

[4] "CR 54(b) makes an immediate appeal available in situations in which it could be unjust to delay entering a judgment on a distinctly separate claim until the entire case has been fully adjudicated." *Nelbro Packing Co. v. Baypack Fisheries, LLC*, 101 Wn. App. 517, 522, 6 P.3d 22 (2000). It applies to multi-party or multi-claim for relief cases. This was not such a case. No "claim for relief" was resolved by the decision appointing a lawyer for Mr. Cudmore.

[5] The certification is provided for by the rules on appeal, not the civil rules, and provides that the order being challenged "involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation." RAP 2.3(b)(4).

trial court disagreed, stating that once the court clearly ruled that Mr. Bolliger was "no longer [Mr. Cudmore's] attorney regardless of [Mr. Cudmore's] wishes" Mr. Bolliger lacked authority to re-note anything. RP (Sept. 20, 2013) at 52-53.

Mr. Bolliger fails to show a lack of support for the findings or that they fail to support the conclusion.

### *Finding 9*

Mr. Bolliger next challenges finding 9, arguing that it misleadingly implies that a hearing he noted for September 13, 2013, was stricken based on a motion by Mr. Lamberson's lawyer. The finding does not imply a cause and effect relationship between a motion and the striking of the hearing.

What the finding does say is supported by the record. Evidence demonstrates that Mr. Lamberson's lawyer filed a declaration in support of striking the hearing or for a continuance on September 10, 2013,[6] the declaration reminded the court that Mr. Bolliger had not been appointed to represent Mr. Cudmore and was not an attorney or party to the case, and the court struck the September 13, 2013 hearing.

### *Conclusions 4, 6, 7, and 8*

Finally, Mr. Bolliger challenges conclusions 4, 6, 7, and 8 insofar as they state that his actions were not warranted by law or fact because at the time he took them he was not

---

[6] The finding states that the declaration was filed on September 9, but it was signed on that date and filed on September 10.

an attorney for any party. He argues that because Mr. Cudmore had a right under RCW 11.88.045(1)(a) to retain a lawyer to contest the guardianship, Mr. Bolliger's actions on Mr. Cudmore's behalf *were* warranted by fact and law.

As already discussed, when that argument failed in the trial court and he was disqualified, Mr. Bolliger's option was to seek discretionary review. Neither the facts nor law supported his continuing participation in the guardianship proceeding.

### *III. Attorney fees*

Both parties request attorney fees. Under RAP 18.1, we may award attorney fees and costs on appeal if authorized by applicable law.

Mr. Bolliger seeks fees under CR 11. "[CR 11] is intended for use in superior court, not in the appellate court." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 750, 218 P.3d 196 (2009). His request is denied.

Mr. Lamberson's request for an award of fees under CR 11 is denied for the same reason.

Mr. Lamberson also requests an award of fees under RAP 18.9. Under RAP 18.9(a), we "may order a party or counsel . . . who . . . fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by . . . the failure to comply."

Mr. Lamberson first argues that Mr. Bolliger violated RAP 3.1, which provides that "[o]nly an aggrieved party may seek review by the appellate court." But "a lawyer

17

sanctioned under CR 11 is an 'aggrieved party' and may therefore seek review of the sanctions under RAP 3.1." *Splash Design, Inc. v. Lee*, 104 Wn. App. 38, 44, 14 P.3d 879 (2000). RAP 3.1 was not violated.

Mr. Lamberson argues that Mr. Bolliger also violated the rules on appeal by failing to include a statement of issues in his statement of arrangements as required by RAP 9.2(c); by submitting only his own pleadings in the designation of clerk's papers in violation of RAP 9.6; by excluding proceedings unfavorable to his position in his statement of arrangements, violating RAP 9.2(b)'s requirement that "[a] party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review"; and by exceeding page limits and missing submission deadlines provided to him by this court in violation of RAP 17.4. Review of the appellate record bears out Mr. Lamberson's claim of rule violations. But a compensatory award of attorney fees under RAP 18.9(a) is available only to the extent Mr. Lamberson can demonstrate harm from Mr. Bolliger's failure to comply.

We grant Mr. Lamberson's request for any reasonable attorney fees he can demonstrate were incurred because of Mr. Bolliger's rule violations. The award is subject to his timely compliance with RAP 18.1(d).

Affirmed.

No. 32206-8-III
*In re Guardianship of Cudmore*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.

19